: The Honorable Donald L. Graham

United States Judge

January 29, 2014

FILED by _____ D.C.

FEB 10 2014

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. of FLA. – MIAMI

From: Valdoquin, Ramon

DOCKET No. 08-20482-CR-GRAHAM

SD/FL PACTS No. 96523

Dear Sir:

    I am writing directly to you today because it is my contention that the special conditions of supervised release number (04)" Computer Modem Restriction-The defendant shall not possess or use a computer that contains an internal, external or wireless modem without the prior approval of the Court." and number (05)"Computer Possession Restriction-The defendant shall not possess or use any computer, except that the defendant may, with the prior approval of the Court, use a computer in connection with authorized employment.", are "inconsistent with the vocational and educational goals of supervised release as outlined in U.S.C. 3553(a) (2) (D), and that they should be remanded in order to devise a more limited internet restriction."[01]

    In addition, I would submit that special condition number (10)" No Contact with Minors-The defendant shall have no personal, mail, telephone, or computer contact with children/minors under the age of 18, with the exception of his daughter, C.S. Valdoquin.", is overly restrictive, and at times, and under some unforeseen circumstances, may place me in violation of that condition.

    I am writing this letter today because "(the defendant) is free to request that the court modify the condition(s) of supervised release. See 18 U.S.C. 3583(e) (2); Fed. R. Crim. P. 32.1(c) & advisory committees' note to 1979 Addition (acknowledging "conditions should be subject to modification, for the sentencing court must be able to respond to changes in the probationer's circumstances as well as new ideas and methods of rehabilitation"), *United States v. Gross*, 307 F.3d 1043,1044 (9th Cir. 2002) (noting that 3583(e) allows "a sentencing court...to respond to changes in the defendant's circumstances that may render a previously imposed condition of release either too harsh or inappropriately tailored")." [02]

Background:

    In January of 2009, at my sentencing hearing, my attorneys and I concentrated on an attempt to reduce the term of incarceration down from the 60 months in the plea agreement, and to my detriment, were not aware of how overly restrictive some of the supervised release conditions are. After my first three years of incarceration, having been denied the opportunity for vocational training in plumbing or air-conditioning, I began to study small business management textbooks, as well as marketing, in a small group that was given support by the education department of the facility. I continued my studies and

began to specialize in import-export, which generally does not require licensing for products and is open to ex-felons. Almost all the textbooks that we studied from were obtained from inmates participating in the courses.

Utilizing these resources, I designed a business plan for an import-export business with an emphasis on frozen poultry, minus the detailed financial estimates which were unavailable to me in prison. At the time, I was not aware that there would be an almost complete ban on my using a computer or the Internet. I was only aware that on release I would be labeled an ex-felon and an offender, and that the stigma of such labels would weigh heavily against most employment other than self-employment, or as stated by Circuit Judge Karen Henderson of the D.C. Circuit, "If (Russell) cannot find a job, it is more likely because of his criminal record than the computer ban."[03] As a result of my studies, I accumulated well over three hundred pages of notes and a great number of references to websites in order to facilitate running an import-export business, as well as follow up on the latest information available pertaining to sales and marketing. I also composed an indexed, hand-written book on drug addiction recovery of about 200 pages which I intended to self-publish on my release. It was to my chagrin when I was released in July of 2013 and found that I would not be able to be self-employed after the almost 18 months of study. In addition, I found that I would not be able to update and rewrite to tailor my resume on a computer-that was prohibited as well. In addition, during the last month of my release, I established a good relationship with an elder owner of a combination museum and antique shop, who had a need to itemize his inventory and radically increase sales in his establishment. I had a hand-written distribution contract that I had copied in prison, but I did not have nor was I allowed to use the tools to market his wares over the Internet. In my frustration, I began to utilize the computers in the public library to at least update my resume and apply online directly to several corporations, amongst them A.T.&T., Allstate Insurance, Blue Cross/Blue Shield of Florida (a previous employer), and Federal Express. I am sorry that I did so, and have had to serve more time in prison, and I am hoping with this letter to be able to have a better start back on supervised release again in March 2014.

The Computer and Internet Restriction:

I maintain that, based on several decisions made throughout circuit courts at the appellate level, the current computer restrictions fail to satisfy the narrow tailoring requirement of 18 U.S.C.S 3583(d)(2). Although a computer was used to commit a crime, the appellate court of the Second Circuit was "more persuaded by the observation in (*United States v. Peterson*) that "although a defendant might use the telephone to commit fraud, this would not justify a condition of probation that includes an absolute bar on the use of telephones." Peterson, 248 F .3d at 83.""[04] They also noted that "computers and Internet access have become virtually indispensable in the modern world of communications and information gathering."[05] I do not agree that I should not have monitored access to email, or to visit government websites such as United States Customs & Border Patrol or the State of Florida Corporations and Taxation, or even to view music videos on YouTube, or as the Third Circuit concurs, "There is no need to cut off Freeman's access to e-mail or benign Internet usage when a more focused restriction, limited to pornography sites and images, can be enforced by unannounced inspections of material stored on Freeman's hard drive or removable disks." [06]

It is my observation that the weight of authority leans toward the application of a special condition with the most reasonable and the least intrusive restriction on the ability to conduct a decent living in today's world. "We review the reasonableness of a supervised release term against the 3553(a) factors, recognizing that the primary purpose of supervised release is to facilitate the integration of offenders back into the community rather than to punish them." Albertson, 645 F .3d at 197 (internal quotation marks omitted). "Congress intended supervised release to assist individuals in their transition to community life." *United States v. Johnson*, 529 U.S. 53, 59, 120 S. Ct. 1114, 146 L. Ed. 2d 39 (2000). Thus, "supervised release fulfills rehabilitative ends, distinct from those served by incarceration." Id." [07] I am of the opinion that being denied access to online, up-to-date financial information on wholesale prices of poultry throughout the United States, as well as retail pricing in Latin America - information that I need in order to complete a business plan begun in prison - amounts to a continuing form of punishment. I contend that the current computer and internet restrictions, which do not allow me to access online collectibles periodicals, nor place photographs of antiques for sale online, "exceeds even the broad discretion of the sentencing judge with respect to conditions of supervised release." [08] Restrictions against these types of activities, as well as using applications such as Quickbooks for tracking personal as well as business expenses, are in contradiction with standard condition of supervised release number (04)"The defendant shall support his or her dependents and meet other family responsibilities." It is for this reason that I am requesting that I be allowed monitored access to a computer and the Internet.

I would argue that the current special conditions, which are overly broad, "should be imposed only on a record that permits a thorough evaluation of other alternatives that might be sufficient to serve the statutory purposes of protecting the public and deterring future crimes."[09] Hence, I do not see the need to prohibit my being able to transfer my manuscript to a Word document utilizing a free application such as Evernote, and self-publish it through Amazon in order to obtain a higher royalty. This could be accomplished with a narrow tailoring of the condition to allow monitored access to the Internet from one device, thus resulting in the lowest deprivation of liberty to conduct commerce and communications in today's society. Such a condition would "consider the ubiquitous nature of the Internet as a medium of information, commerce, and communication as well as the availability of (monitoring and) filtering software that could allow (Miller's) internet activity to be monitored and/or restricted."[10]

There have been instances of appellate courts objecting to the monitoring of computers. In 2011, the Fifth Circuit stated, "with great respect to the rationale of some of the decisions of our sister circuit courts, we reject the argument that a district court may only resort to restrictions on Internet access like those imposed in the present case after investigating the efficacy of other options such as monitoring computer usage and Internet sites visited, unannounced inspections, and filtering devices. Internet access is widely available at locations other than one's home or place of employment. Internet access is similarly widely available from many types of devices that defendant's like Miller might obtain or use without detection. In addition, there are a variety of devices that are likely to be possessed by friends, family, and acquaintances that might be available to defendants such as Miller for Internet access without detection." [11] I believe this objection appears to miss the point. Allowing internet access from only one computer would make access from any others a violation of the special condition, and I am not requesting access from multiple computers or "many types of devices." .ibid I am asking to be able to, for example, find the current tariffs for product importation into Ecuador, investigate the current range

of wholesale prices throughout that country, or utilize the computer assisted application Visio in order to design and print my company logo. The current computer restrictions allowing access only to find employment run counter to the opinion that "courts have generated a large universe of decisions rejecting such unmodifiable restrictions, typically involving (as here) the public's interest in the defendant's rehabilitation through the productive use of his or her skills."[12]

I would assert that the prohibition of my accessing and participating at websites such as Coursera, which offers free, online educational courses on small business administration and marketing, runs counter to 18 U.S.C. 3553(a) (2)(D), "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." I am of the opinion that the current, almost "complete ban on internet access is difficult to justify as a least restrictive means of satisfying the statutory objectives of supervised release in the case of a defendant whose criminal conduct involved simple possession of child pornography."[13] A review of circuit court decisions reveals computer and internet monitoring programs available in Portland, Maine, New York, NY, Springfield, Illinois, Little Rock, Arkansas, Albuquerque, New Mexico, and Los Angeles, California. It is my contention that the current computer restrictions, in light of the availability of monitoring programs imposed and utilized throughout the country, run counter to 18 U.S.C.S. 3553(a) (6), "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

I would suggest using the following wording for the special condition, as adapted from *United States v. Brumberg,* and *United States v. Quinzon*, to be more appropriate:

Defendant is permitted to possess and/or use a computer and is allowed access to the Internet. However, the defendant is not permitted to use a computer, or other electronic communication or data storage devices, including a cell phone, to access child pornography or to communicate with any individual or group for the purpose of promoting sexual relations with children or accessing child pornography. Defendant shall consent to the installation of any hardware/software to monitor any computer or other electronic communication or data storage devices used by defendant to confirm his compliance with this condition. Defendant shall pay the monitoring costs, not to exceed $30 a month, as directed by the probation officer. Furthermore, the defendant shall consent to periodic unannounced examinations by the probation officer of any computers, cell phones, or other electronic communication or data storage devices that defendant has access to, to confirm his compliance to this condition. Additionally, defendant shall consent to the seizure and removal of hardware and data storage media for further analysis by the probation officer, based upon reasonable suspicion of unlawful conduct by the defendant. Defendant's failure to submit to the monitoring and/or search of computers and other electronic communication or data storage devices used by defendant may be grounds for revocation. Defendant shall provide the probation officer with accurate information about his entire computer system (hardware/software) and other electronic communication or data storage devices or media to include all passwords used and the name of the Internet Service Provider(s). Defendant also shall abide by the provisions of the Computer Restrictions and Monitoring Program approved by the court. [14][15]

The No Contact with Minors Condition:

    It is my contention that based on appellate circuit case law, the special condition number 10, "No Contact with Minors", is overly restrictive. While it is understood that a limitation on contact with minors may be fitting, as expressed in *"United States v. Loy,"* 237 F .3d @ 267-68 ( holding that it is appropriate to prohibit a defendant from all unsupervised contact with minors even though the defendant was only convicted of possession ) [16]

The special condition as currently written prohibits me from being in contact with family members who are minors, as for example at any family gatherings. It prohibits me from supervised contact with minors, such as may occur when visiting friends' houses when their children are at home. I am not even be able to attend my daughter's birthday party at her mother's home. There is nothing in the sentencing record nor in the PSI does that justify such a sweeping prohibition.

    I submit that this special condition is unnecessarily broad, as it also prohibits me from attending any school functions involving my eight-year old daughter. I am not allowed to take my daughter to an amusement park. It prohibits me from taking my daughter to see a G-rated movie, as I would be "in contact" with minors. It is my understanding that the court "may not impose special conditions categorically on all individuals convicted of certain offenses." [17] Again, I point to the evidence presented in the sentencing hearing and the PSI, where there is no mention whatsoever of predatory behavior. On the contrary, the witnesses who appeared on my behalf stated that they would have no problems with my having contact with their children. I am asking that the condition be remanded and replaced with a more suitable and tailored restriction, as I contend that "a plainly erroneous condition of supervised release will inevitably affect substantial rights, as a defendant who fails to meet that condition will be subject to further incarceration." [18]

    I would suggest the following condition, as worded and adapted from *United States v. Miller*, to be more appropriate: "With the exception of brief, unanticipated, and incidental contacts, the defendant shall not associate with children, (other than his daughter, C.S. Valdoquin), under the age of 18, except for family members, or children in the presence of an adult who has been approved by the probation officer. When the defendant is in the company of his daughter, he will avoid contact with unsupervised minors in a private setting."[19]


Closing:


    In closing, I would like to point out that I would not have been able to prepare this document outside of prison because I am denied access to an online law library under the current conditions. It also bears mentioning that any entry level jobs available at corporations or businesses willing to hire ex-felons who do not have a college degree would probably be offering a starting salary that would not allow me to rent an apartment and help support my daughter as well. I, of course, will not write off the possibility of there being an exception-I will continue to fill out any applications for positions at these companies that are willing to review my work record. I only ask that I have an opportunity to utilize my training and experience to start and maintain my own business so I can once again support myself and

my family, reestablish and normalize relations with my daughter and her mother. And be able to reintegrate back into society in the most productive manner possible.

Respectfully,

Ramon Valdoquin

Footnotes:

[01] *United States v. Perazza-Mercado*, 553 F.3d 65,72,74 (1st Cir. 2009)

[02] *United States v. Quinzon*, 643 F.3d 1266, 1274 (9th Cir. 2011)

[03] *United States v. Russell*, 600 F.3d 631,640 (D.C. Circuit, 2010)

[04] *United States v. Sofsky*, 287 F.3d 122,126 (2nd Cir. 2002)

[05] *United States v. Peterson*, 248 F.3d 79,83 (2nd Cir, 2001)

[06] *United States v. Freeman*, 316 F.3d 386,392 (3rd Cir. 2003)

[07] *United States v. Murray*, 692 F.3d 273, 280 (3rd Cir. 2012)

[08] *United States v. Sofsky*, 287 F.3d 122,124 (2nd Cir. 2002)

[09] *United States v. Mark*, 425 F.3d 505,510 (8th Cir. 2005)

[10] *United States v. Miller*, 594 F.3d 172,188 (3rd Cir. 2010)

[11] *United States v. Miller*, 665 F .3d 114, 133 (5th Cir. 2011)

[12] *United States v. Russell*, 600 F .3d 631, 639 (D.C. Cir. 2010)

[13] *United States v. Mark*, 425 F .3d 505,510 (8th Cir. 2005)

[14] *United States v. Brumberg*, 2013 U.S. Dist. Lexis 43092 (3rd Cir. 2013)

[15] *United States v. Quinzon*, 643 F .3d 1266 (9th Cir. 2011)

[16] *United States v. Smyth*, 213 Fed. Appx, 102,107 (3rd Cir. 2007)

[17] *United States v. Kelly*, 625 F .3d 516, 520 (8th Cir. 2010)

[18] *United States v. Pruden*, 398 F .3d 241,251 (3rd Cir. 2005)

[19] *United States v. Miller*, 594 F .3d 172,190 (3rd Cir. 2010)

Ramon Valdoquin 81186-004
FDC Miami PO Box 019120
Miami, FL 33101-9120

USMS INSPECTED

06 FEB 2014 PM 4 L

MIAMI FL 331

The Honorable Donald L. Graham
Wilkie D. Ferguson, Jr. United
States Courthouse
400 North Miami Ave Rm. 8
Miami, FL 33128

33128181234



RECEIVED
FEB 07 2014
11:56 AM

GO FORWARD / SHALL BE FREE
EMANCIPATION PROCLAMATION
ABRAHAM LINCOLN
1863
FOREVER • USA